IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TYLER MILLER,

                Plaintiff,

       v.

STEVE WATSON,

                Defendant.

Case No. 3:18-cv-00562-SB

**OPINION AND ORDER**

---

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Tyler Miller ("Miller") filed this action against Defendant Steve Watson ("Watson"), asserting a whistleblower retaliation claim in violation of Oregon law. The Court has supplemental jurisdiction over Miller's state law claim under 28 U.S.C. § 1367(a), and all parties have consented to the jurisdiction of a magistrate judge under 28 U.S.C. § 636.

Now before the Court is Miller's motion for reconsideration and certification to the Oregon Supreme Court (ECF No. 175) and motion to modify the Court's scheduling order and for leave to file a second amended complaint (ECF No. 179). The Court denies Miller's motions.

///

///

PAGE 1 – OPINION AND ORDER

**DISCUSSION**

I.    **BACKGROUND**

Miller filed his original complaint on April 2, 2018, alleging several claims against Watson, Jeffrey Dickerson ("Dickerson"), Steve Salle ("Salle"), Akin Blitz ("Blitz"), Bullard Law, and John Does 1-5 ("Does 1-5"), relating to Miller's work for the Columbia 911 Communications District (the "District"), including a due process claim under 42 U.S.C. § 1983 against Watson, Dickerson, Salle, and Does 1-5, violations of a whistleblower statute against Watson and Does 1-5, and intentional or reckless infliction of emotional distress and defamation against all defendants. (*See* Compl., ECF No. 1.)

On June 18, 2018, Blitz and Bullard Law filed an anti-SLAPP motion to strike and Salle and Dickerson filed a motion to dismiss. (ECF Nos. 20, 22.) On April 25, 2019, the Court granted the motion to strike and granted in part the motion to dismiss, striking Miller's defamation claim against Blitz and Bullard Law, and dismissing his due process claim and defamation claim against Dickerson and Salle. (ECF No. 62.)

On January 6, 2020, Miller filed a first amended complaint ("FAC"), asserting a single claim against Watson for whistleblower retaliation. (FAC, ECF No. 85.) On March 3, 2020, Watson moved for summary judgment, arguing, *inter alia*, that Miller's claim was time barred by the applicable one-year statute of limitations. (ECF No. 91.) In the motion, Watson argued that the District terminated Miller's employment on January 20, 2017, by email, and he spoke to Miller about his termination in person on January 25, 2017. (*See* Op. & Order ("Summ. J. Op. & Order") at 8, ECF No. 127.) Miller, on the other hand, argued that he continued to work and was paid through April 2, 2017, and therefore the filing of his initial complaint on April 2, 2018, was timely. (*Id*.)

///

PAGE 2 – OPINION AND ORDER

The Court found that under the applicable statute of limitations, Miller's claims accrued in January 2017, and therefore his April 2018 claim was time-barred. (*Id*. at 12.) The Court did not reach Watson's arguments regarding the merits of Miller's claims. On October 21, 2020, Miller appealed the Court's entry of summary judgment. (Not. Appeal, ECF No. 130.)

On December 14, 2021, the Ninth Circuit reversed this Court's entry of summary judgment for Watson, holding that Miller's claim accrued on April 2, 2017, and was therefore timely. *See Miller v. Watson*, No. 20-35922, 2021 WL 5905722, at *1 (9th Cir. Dec. 14, 2021). The Ninth Circuit did not consider Miller's new argument—raised for the first time on appeal— that Watson's interview with the Oregon State Police ("OSP") on April 5, 2017, was a second, separate injury within the statute of limitations period. *See id.*

On remand from the Ninth Circuit, the Court adopted the parties' stipulated proposed case management schedule, setting, *inter alia*, a deadline for Miller to seek leave to amend his complaint by June 28, 2022. (ECF No. 145.) On June 22, 2022, Miller moved for leave to file a second amended complaint to include allegations of retaliation under OR. REV. STAT. § 659A.203 based on Watson's interviews with OSP on April 5, 2017, and May 5, 2017. (ECF No. 146.) The Court denied Miller's motion as futile because Watson's alleged retaliation occurred after Miller's termination, and the Court found that the statute protects only employees—not former employees—from retaliation. (*See* Op. & Order, ECF No. 168.)

Miller now moves the Court to reconsider its decision, and in the alternative, to certify the statutory interpretation question to the Oregon Supreme Court. (Pl.'s Mot. Recons. at 1.) Separately, Miller moves to modify the current scheduling order and for leave to file a second amended complaint to alter or "clarify" his current allegations and claims, add new allegations,

and add new claims under OR. REV. STAT. §§ 659A.203(1)(d), 659A.030(1)(f), and

659A.030(1)(g). (Pl.'s Mot. Amend at 1.)

      For the reasons discussed below, the Court denies Miller's motion for reconsideration,

denies Miller's motion to certify, and denies Miller's motion for leave to amend his complaint.

Further, the Court questions whether it should continue to exercise its supplemental jurisdiction

over Miller's remaining state law claim.

## II.    MOTION TO RECONSIDER

      Miller argues that the Court should reconsider its opinion interpreting OR. REV. STAT. §

659A.203 because (1) the statute "clearly applies to former employees, and the contrary

conclusion is manifestly opposed to the policy of the statute[,]" and (2) in the time since the

Court issued its ruling, "Oregon appellate courts issued three opinions that shed significant new

light on the statutory interpretation questions [which] seriously undermines the rationale on

which this Court relied[.]" (Pl.'s Mot. Recons. at 2.)

### A.    Legal Standards

      "Although the Federal Rules of Civil Procedure do not expressly authorize a motion for

reconsideration, '[a] district court has the inherent power to reconsider and modify its

interlocutory orders prior to the entry of judgment.'" *Am. Med. Response Nw., Inc. v. ACE Am.

Ins. Co.*, 31 F. Supp. 3d 1087, 1091 (D. Or. 2014) (quoting *Smith v. Massachusetts*, 543 U.S.

462, 475 (2005)); *see also* FED. R. CIV. P. 54(b) ("[A]ny order or other decision, however

designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all

the parties does not end the action as to any of the claims or parties and may be revised at any

time before the entry of a judgment adjudicating all the claims and all the parties' rights and

liabilities.").

///

PAGE 4 – OPINION AND ORDER

"Reconsideration is an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'" *Shah v. Aerotek, Inc.*, No. 3:21-cv-422-SI, 2021 WL 3521142, at *1 (D. Or. Aug. 10, 2021) (citing *Kona Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2020)). "Motions for reconsideration are not the proper vehicles for rehashing old arguments and are not intended to give an unhappy litigant one additional chance to sway the judge." *Id.* (simplified). "[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Kona Enters.*, 229 F.3d at 890 (citation omitted).

### B.    Analysis

#### 1.    Intervening Change in Controlling Law

Miller does not argue that there has been an intervening change in controlling law, i.e., that an Oregon court has ruled that OR. REV. STAT. § 659A.203 applies to former employees. Rather, Miller relies on several cases—both pre- and post-dating this Court's opinion— interpreting various sections of Oregon's Fair Employment Practices Act, and argues that the cases demonstrate a "trend of Oregon appellate courts rejecting th[e district courts'] narrow interpretations of [OR. REV. STAT.] Chapter 659A."[1] (Pl.'s Mot. Recons. at 4; *see also* Pl.'s Reply Supp. Mot. Recons. at 2, arguing that "reconsideration is justified . . . because cases decided after this Court's order are important and persuasive to correct [the Court's] interpretation of [OR. REV. STAT. §] 659A.203").

---

[1] To the extent Miller bases his argument on cases that pre-date the Court's order, the Court notes that Miller may not use a motion for reconsideration "to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Kona Enters.*, 229 F.3d at 890.

Watson responds that none of the "cases Miller cites reflect an intervening change in the law." (Def.'s Opp'n Pl.'s Mot. Recons. at 6.) The Court agrees.

The cases Miller cites do not address whether "employee," as used in OR. REV. STAT. § 659A.203, includes *former* employees, nor do they alter the long-accepted methodology by which the Court interpreted the statute. Miller instead points to related—but not on-point—authority. (*See, e.g.*, Pl.'s Reply Supp. Mot. Recons. at 5, arguing that "[i]ntervening decisions are persuasive . . . even if not controlling"). Miller's arguments demonstrate that he disagrees with this Court's interpretation of the law, not that there has been an intervening change in the law. *See Mothershed v. Elwell*, 235 F. App'x 683, 683 (9th Cir. 2007) (affirming the district court's denial of a motion to reconsider because the motion demonstrated "only that [the plaintiff] disagrees with the district court's interpretation of the law, and fail[s] to show an intervening change in the controlling law" (citing *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999))); *see also Heu v. Waldorf-Astoria Mgmt. LLC*, No. CV 17-00365 LEK-RLP, 2018 WL 2011905, at *1 (D. Haw. Apr. 30, 2018) ("[A] motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision [and] mere disagreement with a previous order is an insufficient basis for reconsideration.") (simplified); *U-Haul Int'l, Inc. v. Am. Int'l Specialty Lines, Ins. Co.*, No. CV 08-1044-PHX-SRB, 2009 WL 10673963, at *1 (D. Ariz. Feb. 5, 2009) ("Motions for reconsideration can not be used to ask the Court 'to rethink what the court has already thought through,' merely because [the p]laintiffs disagree[] with the [c]ourt's decision.") (citation omitted).

Miller does not identify any change in controlling law and therefore the Court finds that Miller has failed to set forth sufficient grounds to reconsider its opinion.

2.      **Clear Error**

Miller also suggests that the Court committed clear error because its conclusion that OR. REV. STAT. § 659A.203 does not apply to former employees is "manifestly opposed to the policy of the statute." (Pl.'s Mot. Recons. at 1; Pl.'s Reply Supp. Mot. Recons. at 2.) As noted, "one of the bases warranting reconsideration of an order is 'clear error' in that order." *Special Situations Fund III QP, L.P. v. Marrone Bio Innovations, Inc*., No. 2:14-cv-2571-MCE-KJN, 2018 WL 3207891, at *4 (E.D. Cal. June 29, 2018) (citing *389 Orange St*., 179 F.3d at 665). Watson responds, *inter alia*, that "the bulk of Miller's motion [] is nothing more than a reiteration of arguments from his reply in support of his [previous] motion to amend." (Def.'s Opp'n Pl.'s Mot. Recons. at 4.) The Court agrees.

In repeating arguments he previously raised and the Court rejected, Miller is clear that he is dissatisfied with this Court's interpretation of OR. REV. STAT. § 659A.203. However, "[a] party's mere dissatisfaction with the court's order is not sufficient to warrant reconsideration[.]" *Special Situations Fund III QP*, 2018 WL 3207891, at *4 (citing *Twentieth Century-Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir. 1981)); *see also Lipscomb v. S.B.S.D*., No. EDCV1601833FMODFM, 2019 WL 13039885, at *1 (C.D. Cal. Aug. 28, 2019) ("Dissatisfaction with an order is not a proper ground upon which to seek reconsideration."); *Cohen v. Clark Cnty. Sch. Dist*., No. 11-cv-1619-MLH-RJJ, 2012 WL 5473483, at *4 (D. Nev. Nov. 9, 2012) ("[M]ere dissatisfaction with the [c]ourt's [] [o]rder or belief that the court is wrong in its decision are not adequate grounds for reconsideration of a prior order." (citing *Twentieth Century-Fox*, 637 F.2d at 1341)).

Miller has not presented any basis for the Court to find that its holding that OR. REV. STAT. § 659A.203 does not apply to former employees was clear error. Accordingly, the Court denies Miller's motion.

### III.    MOTION TO CERTIFY

Alternatively, Miller moves the Court to certify the question of whether "employee" as used in OR. REV. STAT. § 659A.203 "includes a former employee such that a plaintiff can bring a whistleblower retaliation claim . . . based on conduct occurring after the plaintiff has been discharged." (*See* Pl.'s Mot. Recons. at 51.) Citing several federal cases in accord, the Court answered this question in the negative in its order denying Miller's prior motion for leave to file a second amended complaint. (*See* Op. & Order, ECF No. 168.)

Watson argues, *inter alia*, that because Miller failed to request certification prior to receiving an adverse ruling from this Court, there is a presumption that certification is improper. (*See* Def.'s Opp'n Pl.'s Mot. Recons. at 7.) Watson also argues that certification is inappropriate because "the case has been litigated for some time and certification would cause further delay." (*Id*. at 9.)

For the reasons that follow, the Court declines to certify Miller's question to the Oregon Supreme Court.

### A.    Legal Standards

"[I]f state law permits it, [the Court] may exercise [its] discretion to certify a question to the state's highest court." *Murray v. BEJ Mins., LLC*, 924 F.3d 1070, 1071 (9th Cir. 2019) (citing *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)). "In deciding whether to exercise [its] discretion, [the court] consider[s]: (1) whether the question presents 'important public policy ramifications' yet unresolved by the state court; (2) whether the issue is new, substantial, and of broad application; (3) the state court's caseload; and (4) 'the spirit of comity and federalism.'" *Id*. at 1072 (quoting *Kremen v. Cohen*, 325 F.3d 1035, 1037-38 (9th Cir. 2003)).

OR. REV. STAT. § 28.200 allows a district court to certify dispositive questions of Oregon law to the Oregon Supreme Court. *See* OR. REV. STAT. § 28.200. The Oregon Supreme Court

may answer questions of law a district court certifies "if there are involved in any proceedings before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court and the intermediate appellate court of this state." *Id.*

"The decision to certify a question to a state supreme court rests in the 'sound discretion' of the district court." *Pranger v. Or. State Univ.*, No. 3:21-cv-00656-HZ, 2023 WL 111983, at *5 (D. Or. Jan. 4, 2023) (quoting *Foraker v. USAA Cas. Ins. Co.*, No. 3:14-cv-87-SI, 2019 WL 486177, at *1 (D. Or. Feb. 7, 2019)). "Before a district court can utilize its discretion to certify a question to the Oregon Supreme Court, the proposed question must meet five criteria created by [OR. REV. STAT. § 28.200]:

> (1) The certification must come from a designated court; (2) the question must be one of law; (3) the applicable law must be Oregon law; (4) the question must be one that may be determinative of the cause; and (5) it must appear to the certifying court that there is no controlling precedent in the decisions of [the Oregon Supreme Court] or the Oregon Court of Appeals.

*Id.* (quoting *W. Helicopter Servs., Inc. v. Rogerson Aircraft Corp.*, 311 Or. 361, 364 (1991)). "The first four elements can be determined objectively by the certifying court." *Id.* (citing *W. Helicopter Servs.*, 311 Or. at 366). "The certifying court determines the fifth element subjectively[, i]n other words, to meet the fifth element, the certifying court must determine for itself whether the question of law proposed to be certified is 'already controlled by existing Oregon appellate precedent.'" *Id.* (citing *W. Helicopter Servs.*, 311 Or. at 366).

### B.    Analysis

This Court qualifies as a designated court and finds that Miller's proposed question is one under Oregon law, is a pure question of law, and may be dispositive of whether Miller's claim under OR. REV. STAT. § 659A.203, with respect to the alleged post-employment retaliation,

moves forward.[2] The fifth element required for certification is also met here because, in deciding that the statute does not apply to former employees, the Court cited prior federal cases in accord but recognized that there is no controlling authority from an Oregon court. (*See* ECF No. 168.)

Nevertheless, the Court finds that certification is not appropriate here. *See Ferguson v. Smith*, No. 3:18-CV-372-SB, 2021 WL 4330851, at *1 (D. Or. Sept. 23, 2021) ("Even if the question meets these five criteria, the decision to certify a question to a state supreme court 'rests in the 'sound discretion' of the district court.'" (citing *Freyd v. Univ. of Or.*, 990 F.3d 1211, 1223 (9th Cir. 2021) and quoting *In re Compl. of McLinn*, 744 F.2d 677, 681 (9th Cir. 1984))); *see also Eckard Brandes, Inc. v. Riley*, 338 F.3d 1082, 1087 (9th Cir. 2003) ("Even where state law is unclear, resort to the certification process is not obligatory.").

Where the Court issues an unfavorable opinion and the losing party thereafter requests certification, there is a presumption that certification is improper. *See, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013) ("[T]here is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision when the party that lost below did not mention the possibility of certification until after the district court entered summary judgment against it because a party should not be allowed a second chance at victory through certification.") (simplified); *see also Cantwell v. Univ. of Mass.*, 551 F.2d 879, 880 (1st Cir. 1977) ("We do not look favorably, either on trying to take two bites at the cherry by applying to the state court after failing to persuade the federal court, or on duplicating judicial effort."). Here, although Miller could have moved to certify the question in his motion or reply or at oral argument, he waited to move to certify until after the Court denied his motion. *See*

---

[2] As discussed later in this opinion, the Court denies Miller's motion for leave to file a second amended complaint which would have added additional state law claims.

*Hinojos*, 718 F.3d at 1109 (denying the defendant's motion to certify because "[the defendant] had an opportunity to suggest certification in its pre-argument brief or even at oral argument[, and i]t could have urged that, in the event that this court was not persuaded that [state] law clearly favored its position, the appropriate course of action would be certification to the [state] Supreme Court" yet the defendant chose "not to urge certification as an alternative course of action, presumably for tactical reasons—possibly because having prevailed below it greatly preferred to have the case decided by a federal court").

Miller explains that he waited to move for certification until after the Court denied his motion because the issue was "only one of numerous issues raised in Watson's response in opposition to the motion to amend[.]" (Pl.'s Reply Supp. Mot. Recons. at 14, rhetorically asking the Court, "[h]ow efficient would it have been for Miller to have sought certification of the issue . . . given the several other purportedly dispositive issues raised by Watson[?]"). Miller recognizes that "[t]he proposed question of state law only became central to Miller's amendment after this Court issued its ruling" (*id*.), acknowledging that this Court's adverse ruling triggered his request for state court involvement. *See Thompson v. Paul*, 547 F.3d 1055, 1065 (9th Cir. 2008) ("There is a presumption against certifying a question to a state supreme court after the federal district court has issued a decision [because a] party should not be allowed 'a second chance at victory' through certification . . . after an adverse district court ruling."); *see also Van v. LLR, Inc*., 562 F. Supp. 3d 1, 4 (D. Alaska 2021) ("Allowing parties to exploit certification as a de facto reconsideration or appeal would turn the district court's decision into nothing but a gamble.") (simplified).

The Court finds that Miller's motion for certification reflects "an attempt to obtain a 'second chance at victory through certification.'" *Id*. (quoting *Hinojos*, 718 F.3d at 1109);

*Hinojos*, 718 F.3d at 1109 (finding that the defendant's request to certify "would unnecessarily embroil the Supreme Court of the State of California in [the defendant's] attempt to find a more favorable forum"). Accordingly, the Court denies Miller's motion for certification to the Oregon Supreme Court.

## IV.    MOTION TO AMEND COMPLAINT

Miller again moves for leave to file a second amended complaint. (*See generally* Pl.'s Mot. Amend.) Miller argues that "[t]he amendments to the complaint respond to a recent change in operative law and newly-discovered facts, and will clearly state the claims and facts that Miller will prove at trial." (*Id*. at 1.)

Watson responds that the Court should not allow Miller to amend his complaint for several reasons, including, *inter alia*, that (1) good cause does not exist to modify the scheduling order in this case; (2) the "new evidence" Miller relies on has been known to Miller since 2020; and (3) the proposed amendments are prejudicial, futile, and based on unreasonable delay. (*See generally* Def.'s Opp'n Pl.'s Mot. Amend.)

### A.    Legal Standards

#### 1.    Rule 16

A case management "schedule may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). "A party demonstrates good cause for the modification of a scheduling order by showing that, even with the exercise of due diligence, he or she was unable to meet the deadlines set forth in the order." *Steinhauer v. Liberty Mut. Ins. Co*., No. 3:18-cv-1416-JR, 2020 WL 6333962, at *7 (D. Or. Aug. 12, 2020) (citing *Zivkovic v. S. Cal. Edison Co*., 302 F.3d 1080, 1087-88 (9th Cir. 2002)), *findings and recommendation adopted*, 2020 WL 5743936 (D. Or. Sept. 25, 2020), *aff'd*, 2021 WL 5632475 (9th Cir. Dec. 1, 2021); *see also Estep v. Forever 21 Retail, Inc*., No. 3:16-cv-02214-SB, 2019 WL 430884, at *1 (D. Or. Feb. 4, 2019)

("The good cause standard focuses on the reasonable diligence of the moving party." (citing

*Noyes v. Kelly Servs.*, 488 F.3d 1163, 1174 n.6 (9th Cir. 2007))); *Enzymotec Ltd. v. NBTY, Inc.*,

754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) ("[T]he good cause standard is not satisfied when the

proposed amendment rests on information that the party knew, or should have known, in advance

of the deadline.").

      "The district court 'is given broad discretion in supervising the pretrial phase of litigation,

and its decisions regarding the preclusive effect of a [scheduling] order . . . will not be disturbed

unless they evidence a clear abuse of discretion.'" *C.F. ex rel. Farnan v. Capistrano Unified Sch.*

*Dist.*, 654 F.3d 975, 984 (9th Cir. 2011) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975

F.2d 604, 607 (9th Cir. 1992), *Noyes*, 488 F.3d at 1174 n.6, and *Zivkovic*, 302 F.3d at 1087).

### 2.    Rule 15

      After a brief period in which a party may amend as of right, "a party may amend its

pleadings . . . [with] the court's leave[,]" and the "court should freely give leave when justice so

requires." FED. R. CIV. P. 15(a). Five factors guide the exercise of a district court's discretion to

allow leave to amend: (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies; (4)

undue prejudice; and (5) futility of the amendment. *See Foman v. Davis*, 371 U.S. 178, 182

(1962).

      Prejudice to the opposing party "carries the greatest weight and is the touchstone of the

inquiry under Rule 15." *Cervantes v. Zimmerman*, No. 17-cv-1230-BAS-NLS, 2019 WL

1129154, at *13 (S.D. Cal. Mar. 12, 2019) (citations omitted). "The party opposing amendment

bears the burden of showing prejudice." *Robillard v. Opal Labs, Inc.*, 337 F. Supp. 3d 962, 967

(D. Or. 2018) (citation omitted).

///

///

## B.    Analysis

The Court finds that Miller has not demonstrated that leave to amend his complaint is appropriate under either Rule 16 or Rule 15.

### 1.    Rule 16

Rule 16 governs Miller's motion because he is seeking to amend the complaint after the expiration of the pleading amendment deadline. (*See* ECF No. 145.)

"A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under Rule 15." *Johnson*, 975 F.2d at 609 (citation omitted). "Unlike Rule 15(a)'s liberal amendment policy which focuses on the bad faith of the party seeking to interpose an amendment and the prejudice to the opposing party, Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Id.* "If th[e] party was not diligent, the inquiry should end." *Id.*

Miller argues that he seeks to amend his complaint to "respond to a recent change in operative law and newly-discovered facts" and to "bring clarity to this case" by cleaning up his allegations to "stat[e] with precision the statutes Watson violated and his retaliatory acts[.]" (Pl.'s Mot. Amend at 1-2.) For the reasons that follow, the Court denies Miller's motion.

### a.    New Claim

#### 1)    Change in Law

Miller argues that the Court should allow him to add a new claim under OR. REV. STAT. § 659A.030(1)(g) because the availability of the claim "arose recently" following the Oregon Court of Appeals' decision in *Allison v. Dolich*, 321 Or. App. 721 (2022). (*Id.* at 2.) Miller asserts that prior to *Allison*, "a claim under [OR. REV. STAT. §] 659A.030(1)(g) [] was unavailable[.]" (*Id.*) Watson responds that the focus of *Allison* was the "definition of the phrase 'any person' contained in [OR. REV. STAT. §] 659A.030(1)(g)," and "[t]here is no reason why

Miller, like the plaintiff in *Allison*, could not have raised the same or similar arguments . . . when he filed his motion to amend in June 2022." (Def.'s Opp'n Pl.'s Mot. Amend at 6.)

"Under [OR. REV. STAT. §] 659A.030(1)(g), it is unlawful 'to aid, abet, incite, compel or coerce' employment practices that are unlawful under OR. REV. STAT. chapter 659A." *Allison*, 321 Or. App. at 724. In *Allison*, the Oregon Court of Appeals decided "whether the legislature intended to impose aider or abettor liability on a person who undertakes to make decisions on behalf of a business-entity employer, resulting in the entity's liability under [OR. REV. STAT.] chapter 659A." *Id.* at 725. The court determined, *inter alia*, that "the legislature's intention was that the persons directing the business-entity employer's unlawful conduct can be held individually liable under [OR. REV. STAT. §] 659A.030(1)(g)." *Id.* at 726. Further, the court concluded that "whether [] individual defendants were acting in their personal capacities or on behalf of the [business entity], they were 'persons' who assisted the [business entity] by making the decisions that enabled the violations." *Id.*

According to Miller, *Allison* was a "sea change in Oregon employment law[.]" (Pl.'s Mot. Amend at 5, citing *Allison*, 321 Or. App. at 724.) Miller claims that pre-*Allison*, "District of Oregon cases interpreted [OR. REV. STAT. §] 659A.030(1)(g) to mean that 'when a primary actor, such as a supervisory employee, acts on behalf of an entity in the course of their employment, they are not aiding and abetting the entity." (*Id.* at 8, citing *Molan v. Deschutes Cnty. Sheriff's Off.*, No. 6:19-cv-01422-MC, 2020 WL 5507531, at *4 (D. Or. Sept. 11, 2020)). As such, "Watson did not face liability because he was the primary actor that retaliated against Miller [and a]ny attempt to allege that claim would have failed as futile." (*Id.*) The Court disagrees.

First, as a practical matter, Miller now relies on the recent *Allison* decision to seek to hold Watson liable for aiding and abetting the District's alleged retaliation, yet Miller does not—now

or in any prior version of his complaint—assert any claim against the District. Miller's claim that

he would have alleged that Watson aided and abetted the District's retaliation if state law

allowed pre-*Allison* is disingenuous where Miller has never alleged a retaliation claim against the

District.

Second, the Court finds that Miller's aiding and abetting claim against Watson would

have been viable pre-*Allison* because Miller does not allege here that Watson acted unilaterally

on behalf of the District. Rather, Miller has acknowledged that it was a subcommittee of the

District's board of directors that decided to terminate Miller's contract and the board that decided

to initiate the investigations at issue, and therefore Watson was not the District's primary

decisionmaker. (*See* Summ. J. Op. & Order at 4, "On December 22, 2016, the District's board

met and discussed the Miller Report. The board 'delegated further action . . . to a subcommittee

that included a board member, district employee Nancy Edwards, and [Watson].' The

subcommittee decided not to adopt the Miller Report, and decided to terminate Miller's

subcontract with the District"; *see also id.* at 5, noting that the District's board of directors

retained Bullard Law to conduct the investigations at issue in this case) (citations omitted).

As such, a pre-*Allison* aiding and abetting claim against Watson was not foreclosed by

those decisions finding that an employer's primary decisionmaker cannot aid or abet himself

because Miller has not alleged that Watson acted alone here. *See, e.g.*, *Botello v. City of Salem,*
*No. 6:20-cv-00358-MC, 2020 WL 4431781, at *3 (D. Or. July 31, 2020)* (holding that where the

plaintiff alleged only that his supervisor discriminated against him, the plaintiff's claim that his

supervisor aided and abetted the discrimination failed because "[o]ne cannot aid and abet

oneself"); *Aichele v. Blue Elephant Holdings, LLC*, 292 F. Supp. 3d 1104, 1115 (D. Or. 2017)

("In this District courts have held a primary actor in an employee's termination cannot be held

liable pursuant to this statute for aiding and abetting when that person was the primary decision-maker and acting pursuant to their authority."); *Hannan v. Bus. Journal Pubs., Inc.*, No. 3:14-CV-00831-SB, 2015 WL 9265959, at *18 (D. Or. Oct. 2, 2015) (entering summary judgment for defendant supervisor because the defendant "cannot be liable for aiding and abetting age discrimination where he was the primary actor in [the plaintiff's] termination"), *findings and recommendation adopted*, 2015 WL 7720496 (D. Or. Nov. 30, 2015).

For these reasons, the Court does not agree that an aiding and abetting claim against Watson was previously unavailable to Miller, and therefore Miller has not demonstrated good cause to modify the Court's scheduling order at this time. (*See* Pl.'s Mot. Amend at 8.)

### 2)    New Evidence

Miller also argues that he has discovered new evidence in the form of "recently obtained important documents pursuant to this Court's discovery orders." (*Id*. at 5.) Miller argues that in response to the Court's orders, non-party Bullard Law produced documents that purportedly "provide strong factual support for the claim that []Blitz, a Bullard Law attorney retained by the District, encouraged Watson to make false statements to OSP accusing Miller of blackmail." (*Id*.) Miller argues his present motion is a response to this "crucial new evidence." (*Id*. at 6.) The "revelatory documents" include the transcript of Blitz's June 21, 2022, deposition in a prior related case, billing statements for Blitz and Bullard Law attorney Liana Reeves ("Reeves"), and an outline of the presentation that Blitz and Reeves gave to the executive session of the District's Board of Directors on April 21, 2017. (*See* Decl. Cody Hoesly Supp. Pl.'s Mot. Amend ("Hoesly Decl."), Exs. 2-4.)

Watson argues, however, that this "new evidence" "simply reiterates information known to Miller and his prior counsel since 2020, at the latest." (Def.'s Opp'n Pl.'s Mot. Amend at 5.) According to Watson, Miller has known that (1) "the contents of the Blitz Report, including the

allegations it makes about Miller's motives, since Miller filed a declaration in this very case in 2018[;]" (2) "Blitz had conversations with individuals from the Columbia County Sheriff's Office which led to the [OSP] investigation since [Miller's former counsel took] the depositions of [District board members] Dickerson and Salle" in December 2019 and January 2020; and (3) "Blitz provided information to the [OSP] during its investigation not later than his receipt of the report in response to his public records request" filed in 2020. (*Id*. at 5-6; citing Decl. Beth Plass Supp. Def.'s Opp'n Pl.'s Mot. Amend ("Plass Decl."), Exs. 2-3.)

Miller responds with an acknowledgement that he "has long been aware of the Blitz Report and the District's intent to start a criminal investigation [and t]hat means that the [Proposed] SAC will introduce no new factual issues, because the new evidence simply provides concrete examples of those more general allegations." (Pl.'s Reply Mot. Amend at 9.) Miller also recognizes that he "knew that the District played a role in the OSP investigation, so that issue is not new." (*Id*. at 10.) Based on Miller's own characterization that the purported "new" evidence is "not new," the Court concludes that the information on which Miller relies to seek to amend his claim was or should have been known to him earlier in this litigation. *See AmerisourceBergen Corp. v. Dialysist W., Inc*., 465 F.3d 946, 953 (9th Cir. 2006) ("In assessing timeliness, we do not merely ask whether a motion was filed within the period of time allotted by the district court in a Rule 16 scheduling order[, r]ather, in evaluating undue delay, we also inquire 'whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading.'") (citation omitted). Thus, discovery of new evidence confirming facts already known to Miller does not open the door to amend his complaint this late in the litigation.

///

### b.    Clarification of Existing Claim

Miller also seeks to "clearly state the law and facts that Miller will prove at trial [by] add[ing] citations to the statutes that Miller's claims arise under, expressly stating the precise laws that [] Watson violated [and] would clarify . . . that [Miller] has a claim under 659A.203." (Pl.'s Mot. Amend at 1.) Specifically, Miller argues that he would "cite to 659A.030(1)(f) and (g)" and that these claims "will be proven by the same facts as Miller's claim under [OR. REV. STAT. §] 659A.203, and the legal analysis of 659A.030(1)(f) is already required by Miller's claim under 659A.030(1)(g)."[3] (*Id.*) Miller also seeks to add "two additional paragraphs to allege Watson's two discrete retaliatory actions that give rise to claims under the above statutes." (*Id.*)

Watson responds that with respect to these proposed additional claims and factual assertions, Miller "makes no argument that he has shown good cause to add claims" and further "does not argue that there has been an intervening change in the law or that 'newly' discovered evidence supports his claims." (Def.'s Opp'n Pl.'s Mot. Amend at 4.) Thus, according to Watson, "[t]here is no reason why Miller could not have moved to amend to add these claims" earlier and because "Miller was not diligent in seeking these amendments . . . 'the inquiry should end.'" (*Id.*, citing *Johnson*, 975 F.3d at 609.) The Court agrees.

As Miller makes clear in his motion, his proposed amendments "will be proved by the same facts" as his existing claim. (Pl.'s Mot. Amend at 1.) Miller does not assert that there has been a change in the law with regard to his alleged claims under OR. REV. STAT. § 659A.203 or OR. REV. STAT. § 659A.030(1)(f). At any time since filing his initial claim in 2018, Miller could have sought leave to amend his complaint to add the "precis[ion]" and "clari[t]y" he now seeks.

---

[3] Having already determined that no good cause exists to allow Miller to add a new claim under OR. REV. STAT.§ 659A.030(1)(g), the Court considers only whether good cause exists to allow an amendment to add a claim under OR. REV. STAT. § 659A.030(1)(f).

Miller's attempt to amend his complaint to add new allegations and claims more than five years after filing this case does not constitute diligence under Rule 16. *See, e.g.*, *Schwerdt v. Int'l Fidelity Ins. Co.*, 28 F. App'x 715, 719 (9th Cir. 2002) (holding that a delay of one month after learning of new facts does not constitute diligence under Rule 16). Accordingly, the Court declines to modify the current scheduling order to allow Miller to "clean up" his complaint.

### 2. Rule 15

After a brief period in which a party may amend as of right, "a party may amend its pleadings . . . [with] the court's leave[,]" and the "court should freely give leave when justice so requires." FED. R. CIV. P. 15(a). District courts have broad discretion in applying Rule 15. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). Five factors guide the exercise of this discretion: (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies; (4) undue prejudice; and (5) futility of the amendment. *See Foman*, 371 U.S. at 182. However, "[o]nce the district court had filed a pretrial scheduling order pursuant to Federal Rule of Civil Procedure 16 . . . that rule's standards control the subsequent course of the action unless modified by the court." *Johnson*, 975 F.2d at 607-08 (citing FED. R. CIV. P. 16(e)).

As discussed above, Miller filed his current motion to amend several months after the post-appeal June 28, 2022, pleading amendment deadline (*see* ECF No. 145), and therefore Rule 16 governs and precludes Miller's untimely request. *See Roller v. Herrera*, No. 3:18-CV-00057-JR, 2019 WL 7633161, at *3 (D. Or. May 30, 2019) ("It is well-established that where, as here, a motion to amend is lodged after the deadline for the filing of all pleadings . . . Rule 16 governs." (citing *Johnson*, 975 F.2d at 607-09)); *see also Lang v. Or. Shakespeare Festival Ass'n*, No. 1:12-CV-01844-CL, 2015 WL 5023060, at *2 (D. Or. Aug. 24, 2015) ("Rule 16 governs motions for leave to amend that require modification of the court's pretrial scheduling order.").

///

In any event, the Court finds that Miller's proposed amendments are also improper under the more liberal Rule 15. *See Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004) (holding that under the "extreme liberality" of Rule 15, a court must assess the propriety of amendment by considering five factors: "bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint"); *see also Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999) ("A district court determines the propriety of a motion to amend by ascertaining the presence of any of four factors: bad faith, undue delay, prejudice to the opposing party, and/or futility."). Specifically, for the same reasons discussed above, the Court finds that Miller's request to amend his complaint is the result of undue delay.[4] *See, e.g., Nat'l Funding, Inc. v. Com. Credit Counseling Servs., Inc.*, No. CV 18-6437-MWF (ASX), 2020 WL 10965737, at *4 (C.D. Cal. Nov. 5, 2020) (denying the plaintiff's motion to amend his complaint where the plaintiff had "not recently learn[ed] of the facts" forming the basis of the proposed additional allegations and noting that "the fact that [the p]laintiff could have alleged the[] facts in [an earlier complaint], but inexplicably chose not to, suggests that [the plaintiff's m]otion is the result of undue delay").

### C.    Conclusion

The Court finds that Miller has not demonstrated good cause to amend his complaint under either Rule 16 or 15. Accordingly, the Court denies Miller's motion for leave to amend.

///

///

///

---

[4] The Court need not reach Watson's arguments that amendment would be futile or that he would be prejudiced by these late amendments. (*See* Def.'s Opp'n Pl.'s Mot. Amend at 8-9.)

## V.    SUPPLEMENTAL JURISDICTION

Miller's only remaining claim arises under OR. REV. STAT. § 659A.203.[5] The Court is concerned that continuing to exercise its supplemental jurisdiction over a single state law claim is no longer appropriate in this matter.

### A.    Legal Standards

Federal courts are courts of limited jurisdiction. *See* U.S. CONST. art. III, § 2. A federal court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court must dismiss any case over which it lacks subject matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3).

Even where no party objects to a federal court's jurisdiction, "federal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011); *see also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 501 (2006) ("[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived.") (citation omitted).

Federal courts may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy[.]" 28 U.S.C. § 1367. A district court may decline to exercise supplemental jurisdiction over a state law claim "if (1) the claim raises a novel or complex issue of state law,

---

[5] As the Court noted in its earlier order denying Miller's previous motion for leave to file a second amended complaint, the parties appear to agree that Miller's claim arises under OR. REV. STAT. § 659A.203, although Miller never cited to a specific statute in his original, operative, or prior proposed amended complaints. (*See* Op. & Order, ECF No. 168.)

(2) the claim substantially predominates over the [original jurisdiction claim], (3) the district

court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional

circumstances." *Id.* § 1367(c). "A district court's decision whether to exercise [supplemental]

jurisdiction after dismissing every claim over which it had original jurisdiction is purely

discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).

### B.    Analysis

Miller's only remaining claim arises under Oregon state law. As such, the Court no

longer has original jurisdiction over this case.[6] "[I]n the usual case in which all federal-law

claims are eliminated before trial, the balance of factors to be considered under the pendent

jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward

declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v.*

*Cohill*, 484 U.S. 343, 350 n.7 (1988).

As Miller emphasizes in his motion for certification, this case raises novel issues of state

law. (*See* Pl.'s Mot. Recons. at 51, 53-54, "This is an important and dispositive issue of Oregon

law, and there is no squarely controlling Oregon precedent[;]" "[t]his case raises an important

question of Oregon statutory construction that has never been determined in a controlling manner

by Oregon's appellate courts[;]" "[t]his case raises an important legal issue regarding the proper

interpretation of an Oregon statute[;]" and "[a] decision from the Oregon Supreme Court here

---

[6] Miller originally brought federal claims against several former defendants, and the Court dismissed those claims early in the litigation. (*See* Compl., ECF No. 1; Order, ECF No. 62.) In his original complaint, Miller alleged federal question jurisdiction and thereafter he has alleged only supplemental jurisdiction. (*See id.*; *see also* Proposed SAC ¶ 1, asserting that "[a]t the time of filing, this Court had subject matter jurisdiction under 42 U.S.C. § 1983 and 28 U.S.C. §§ 1331, 1343, and 1367 [and t]his Court continues to have subject matter jurisdiction under 28 U.S.C. § 1367").

would provide necessary guidance to litigants and courts on an issue that has not been resolved definitively by Oregon's appellate courts").

Although Miller initially filed this case in 2018, the pleadings are only now resolved and the parties have not yet filed motions for summary judgment. Although the parties have now completed discovery,[7] the Court anticipates dispositive motions and, likely, a jury trial. Where courts dismiss federal claims before trial, courts consistently decline to exercise supplemental jurisdiction over remaining state law claims. *See, e.g.*, *Breshears v. Or. Dep't of Transp.*, No. 2:22-cv-01015-SB, 2023 WL 136550, at *4 (D. Or. Jan. 9, 2023) ("In light of the [c]ourt's dismissal of [the plaintiff's] federal claim, and because this case has not moved past the pleading stage, the Court declines to exercise supplemental jurisdiction over Breshears's remaining state law claim."); *see also* *Silver v. Clark Cnty., Nev.*, No. 219CV00032APGBNW, 2021 WL 3671183, at *2 (D. Nev. Aug. 17, 2021) (declining to exercise supplemental jurisdiction following dismissal of federal claims and noting that "[a]lthough this case has been pending for some time, [the court] ha[s] not made any substantive rulings on the state law claims and these parties are still at the pleading stage"); *Pearson v. Arizona*, No. cv-20-00237-PHX-MTL, 2021 WL 423423, at *3 (D. Ariz. Feb. 8, 2021) (finding no "considerable procedural advancement" because, *inter alia*, the "case ha[d] not advanced so far procedurally that it would [have] be[en] a waste of judicial resources or unfair to the parties to remand it to state court" and noting that while "[t]he Court ha[d] gained familiarity with the facts and issues presented in th[e] case, [] those considerations align more with the 'usual case in which all federal-law claims are eliminated before trial' than the exceptional circumstance that would override considerations of

---

[7] The Court understands that the final non-party deposition was scheduled to be completed on the date of this filing.

federalism and comity") (citations omitted); *Foxfield Villa Assocs., LLC v. Robben*, 967 F.3d 1082, 1102 (10th Cir. 2020) (holding that the district court did not abuse its discretion in declining to exercise supplemental jurisdiction where "nearly four years ha[d] passed since [the plaintiffs] filed their relevant complaint" and despite "the parties [] engag[ing] in a great deal of discovery and fil[ing] many motions" because "copious state law issues warranted a Kansas state court's consideration in the absence of the sole federal claim"); *Overall v. Univ. of Penn.*, 393 F. Supp. 2d 341, 342 (E.D. Pa. 2005) (declining to exercise supplemental jurisdiction following reversal and remand of the district court's dismissal of the plaintiff's state law claim because "unlike [a] claim that ha[s] been fully litigated . . . plaintiff's [state law] claim is before the court anew, and demands reconsideration of all the evidence on the issue" and noting that "the ultimate decisions on th[e] issue is within the sound discretion of the [c]ourt").

Miller argues strenuously in his motion for certification that Oregon courts are "better equipped to handle" the application of Oregon law presented here.[8] In the interests of federalism and comity, further adjudication of this matter in state court would be appropriate and would be more efficient in light of repeated requests for certification.[9] *See Clark v. Weber*, 54 F.4th 590, 594 (9th Cir. 2022) ("We find no abuse of discretion in the court's refusal to exercise supplemental jurisdiction after it dismissed all of [plaintiff's] federal claims[.]"); *see also Pearson*, 2021 WL 423423, at *3 ("While the [d]efendants maintain that the [c]ourt should not

---

[8] Miller characterizes the Court's decisions in this case as "the latest example of a troubling trend" and argues that "in numerous cases in recent years, [Oregon] appellate courts have rejected this Court's narrow interpretations of Oregon's Fair Employment Practices Act, ORS Chapter 659A." (Pl.'s Mot. Recons. at 14.) The Court notes that Miller chose this federal forum.

[9] Miller moved the Ninth Circuit to certify a different question to the Oregon Supreme Court when he appealed the Court's summary judgment opinion. *See Miller*, 2021 WL 5905722, at *1 ("We . . . deny Miller's motion to certify this question to the Oregon Supreme Court.").

remand this action because the state-law claims require straightforward applications of Arizona tort law, this [c]ourt believes that the state court is better equipped to handle such claims that now substantially predominate the Amended Complaint" and noting that "[j]ust because a district court *can* exercise supplemental jurisdiction over certain state matters does not mean that it *should* [and t]here is nothing unusual about this case that would tilt the balance of factors toward retaining jurisdiction"); *Brown v. Lucky Stores, Inc.*, 246 F.3d 1182, 1189 (9th Cir. 2001) ("The district court did not have original jurisdiction over [the plaintiff's] claims alleging tortious conduct under [state] law [and t]he court's decision to dismiss these claims without prejudice was not an abuse of discretion."); *cf. Riboli v. Redmond Sch. Dist. 2J*, No. 6:19-cv-00593-MC, 2022 WL 309227, at *7 (D. Or. Feb. 2, 2022) ("After careful consideration, the [c]ourt declines to exercise supplemental jurisdiction over [the p]laintiff's remaining state-law negligence claim [because a]ll of [the p]laintiff's federal claims are dismissed, triggering the Court's discretion under 28 U.S.C. § 1367(c)(3)[, and] the unique framework of Oregon negligence law makes this case better suited for state court[.]").

Finally, the Court is sensitive to the time and expense the parties have incurred to date litigating this matter in federal court. The Court anticipates that the parties would proceed efficiently to dispositive motions and trial in state court now that discovery has concluded in this forum. Thus, any inconvenience or unfairness to the parties should be minimal. *See, e.g.*, *id.* ("Inconvenience to the parties is minimal, as the case is at the summary judgment stage, no trial date has been set, and Plaintiff may refile her state-law claim in state court."); *see also* 28 U.S.C. § 1367(d) (providing that the statute of limitations for any dismissed state law claim is tolled while the state claim is pending in federal court and for "a period of 30 days after it is dismissed").

If either party objects to the Court's dismissal of this action without prejudice to be refiled in state court, the party may file a written response addressing why the Court should continue to exercise its supplemental jurisdiction.

## CONCLUSION

For the reasons stated, the Court DENIES Miller's motion for reconsideration and certification to the Oregon Supreme Court (ECF No. 175) and DENIES Miller's motion to modify scheduling order and for leave to file a second amended complaint (ECF No. 179).

As discussed above, if either party objects to the Court's dismissal of this action without prejudice to be refiled in state court, the party may file a written response by June 2, 2023, addressing why the Court should continue to exercise its supplemental jurisdiction.

**IT IS SO ORDERED.**

DATED this 23rd day of May, 2023.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge